## STIPP *v.* THE SPRING MILL AND WILLIAMS CREEK GRAVEL ROAD COMPANY.

GRAVEL ROAD.—*Action to Recover Toll.—Failure to Construct Lawful Road.— Evidence.*—On the trial of an action, brought by a gravel road company organized under the statute authorizing the construction of plank and other roads, (1 R. S. 1876, p. 654,) to recover of the defendant penalties,

Stipp v. The Spring Mill and Williams Creek Gravel Road Company.

as provided in section 17 of said act, for passing over the road of plaintiff and refusing to pay toll, the defendant, to defeat a recovery by plaintiff, by establishing that the road of plaintiff had never been constructed according to the requirements of law, offered in evidence the several written contracts made by the plaintiff's board of directors for the construction of such road.

*Held*, that the evidence was properly excluded, it being too remote and conjectural to establish a fact susceptible of direct proof.

SAME.—*Liability for Toll.—Variance.*—Under section 17 of the statute (1 R. S. 1876, p. 654,) authorizing the construction of plank, gravel and macadamized roads, in an action to recover penalties for passing over the plaintiff's gravel road and refusing to pay toll, the complaint alleged "that at each time defendant *run* through the gate, as aforesaid," though the keeper of the toll-gate was present to receive the toll, the defendant "refused to pay said toll or any part thereof," and the evidence given on the trial of such cause showed that the defendant stopped before the toll-gate, and informed the keeper thereof that he refused to pay toll "because the company was not legally entitled to demand it."

*Held*, that there was no variance between the evidence and the allegations of the complaint.

SAME.—*Liability for Toll.—Failure to Repair Turnpike.—Instruction to Jury.*— In an action by a gravel road company to recover penalties of the defendant for passing over the plaintiff's gravel road and refusing to pay toll therefor, the defence being the unreasonable failure of plaintiff to keep such road in repair, the court below, in reference to the statute (1 R. S. 1876, p. 671,) prohibiting gravel and other roads from collecting tolls in certain cases, instructed the jury trying the cause that, in determining whether the plaintiff had unreasonably neglected to repair its road, they were to consider "*all* the circumstances of the case."

*Held*, that the jury could not well have understood therefrom that they were to consider "circumstances" other than "equitable" ones, as provided in the first section of such statute.

SAME.—*Failure to Repair Turnpike.—Instruction to Jury.*—On the trial of said action, to sustain such defence, defendant introduced evidence referring, principally, to the bad condition of the hilly portion of such gravel road, and the court instructed the jury that "A long and steep hill on a road requires more attention and more frequent repairs than a level, gently rolling surface."

*Held*, that the defendant was not injured by the giving of such instruction.

From the Marion Circuit Court.

*R. B. Duncan, J. S. Duncan, A. G. Porter, W. P. Fishback* and *G. T. Porter*, for appellant.

*E. F. Ritter, L. C. Walker* and *L. Ritter*, for appellee.

**18**     SUPREME COURT OF INDIANA.

Stipp *v.* The Spring Mill and Williams Creek Gravel Road Company.

WORDEN, C. J.—Action commenced before a justice of the peace, by the appellee against the appellant, to recover penalties for passing over the road of the plaintiff and through her toll-gate, and refusing to pay toll.

There was a judgment for the plaintiff before the justice, and, on appeal to the circuit court, there was a.trial by jury, resulting also in a verdict and judgment for the plaintiff.

We will consider the questions made in the brief of counsel for the appellant. They say:

" The defendant's evidence was directed to prove,

" 1st. That the plaintiff's road had never been constructed according to the requirements of law;

" 2d. That, even had it been, it had been suffered to get and remain out of repair, so as to forfeit the plaintiff's right to collect toll until repaired."

" As conducing to establish the first proposition, the defendant offered to prove the several written contracts made by the board of directors of the company for the construction of the road, and that none of those contracts have been complied with in respect to the amount of gravel stipulated to be placed on the road. The evidence shows that these contracts, in respect to the amount of gravel required, were made in conformity to the estimate of what gravel would be required, prepared by persons appointed by the county commissioners, under section 4 of the act under which the plaintiff was organized. 3 Ind. Stat. 535. That statute requires the person so appointed to estimate the cost of the grading and gravelling of the road, and to determine the amount to be paid by the respective owners of land within the prescribed limits on each side of the road."

" The court refused to admit the evidence.* * * We think the court erred in refusing this evidence. We concede that the directors may determine the particular manner of constructing the road, so as to secure and maintain a smooth and permanent road, and that it may be made

of plank, gravel, stone or other hard material.  3 Ind. Stat. 536, sec. 10.  But we maintain that this determination must be expressed, before the person appointed by the commissioners to estimate the grading, gravelling or planking, as the case may be, (*Id.*, p. 535, sec. 4,) has proceeded to discharge his duties."

" How could he proceed to estimate the gravelling or planking, until the determination of the board had been expressed whether the road should be made with gravel or plank?  Could he estimate for a road to be made with gravel, as a means of determining the amount of tax to be assessed, and could the board of directors thereafter determine that the road should be made of plank, for the cost of which no estimate had been made, and, indeed, none could be made, no provision being made by the statute for a new estimate?"

" How could the person appointed by the commissioners, if the road were to be constructed of gravel, estimate for the expense of grading, unless the board of directors had previously determined the depth of the gravel which was to be laid on the road?"

" And could the board, after the depth had been prescribed, and the estimate had been made, increase or diminish the depth at their pleasure, so that the estimate, as a means of ascertaining the cost of the road or the amount of tax required, would be valueless?"

" It seems to us to be plain, that the manner of constructing the road is required to be determined by the directors, before an assessment is made for its construction. If this is so, then it was certainly competent to show the contracts which were made in pursuance of the estimate of the person appointed by the board of commissioners, and that these contracts had never been completed; and that the company had proceeded to erect gates and demand toll before the road was completed."

We have thus extracted from the brief of counsel for

the appellant enough to develop the question thus made, and the argument upon it.

We express no opinion as to the correctness of the conclusions drawn by counsel from the premises assumed by them. But they are under some misapprehension in respect to the premises. It is assumed that the company was organized under the act of March 6, 1865, 3 Ind. Stat. 534, and, therefore, that the fourth section of that act is applicable to the case.

If the company was not organized under that act, the argument falls to the ground. That act contemplates the organization of turnpike companies on a principle different from that on which companies are organized under the act of May 12th, 1852, and its amendments. 1 R. S. 1876, p. 654.

Under the act of 1865, no amount of stock is necessary to be subscribed, but the owners of three-fifths of the real estate within the distance of three-fourths of a mile on each side of the proposed road, may apply to the county commissioners for a permit to build the road, and if the commissioners deem the road of public utility, they may grant the permit, after which the petitioners may organize themselves into a company. The commissioners are then to appoint a person to estimate the cost of grading, gravelling or planking, which is to be assessed upon the property within the prescribed limits.

The act of 1852 provides for the organization of stock companies, and requires a subscription of five hundred dollars per mile, before corporations can be organized, and does not provide for assessments upon property at all. The act of May 14th, 1869, 3 Ind. Stat., p. 538, provided, however, that any company organized, or that might thereafter be organized, under any law of the state authorizing the construction of macadamized and gravel roads, and having a subscription of at least three-fifths of the estimated cost of the construction of the road, might petition the board of commissioners to have the amount of

the benefit of the road to each tract of land within a mile and a half on each side and at each end thereof, assessed upon the land.

Now, we have looked through the record carefully, but in vain, to find any evidence that this company was organized or ever acted under the act of 1865. The complaint alleged that the plaintiff was " a corporation organized under the laws of the state of Indiana," but did not specify under what particular act or acts. The plaintiff's articles of association were given in evidence, and they utterly exclude the idea of an organization under the act of 1865. The articles provide that the capital stock shall be five thousand dollars, divided into two hundred shares of twenty-five dollars each, and the signers of the articles, not professing to be the owners of adjoining land, subscribed for stock.

There was evidence that an assessment had been made, but this, as has been seen, could have been done under the act of 1869, and affords no inference that the company was organized under the act of 1865.

The contracts offered in evidence, and rejected, are in the record. There is nothing in them, from which it can be inferred that the company was organized or acting under the act of 1865.

We think the counsel are mistaken in supposing that "the evidence shows that these contracts, in respect to the amount of gravel required, were made in conformity to the estimate of what gravel would be required, prepared by persons appointed by the county commissioners, under section four of the act," etc. There is nothing, so far as we can discover from a reading of the evidence, either in the contracts or out of them, which shows that the contracts were made in conformity to such estimates. No such estimates are alluded to in the contracts; and if the evidence any where shows that such estimates were made, we have overlooked it.

We think, from what appears before us, that the com-

pany was not organized or acting under the act of 1865, and therefore that the objection to the ruling of the court, so far as we have considered it, is without foundation.

But the counsel claim that, irrespective of the statute, the evidence was competent, as tending to prove that the road had never been completed in such a manner as to empower the company to collect tolls.

The third section of the act of 1852, under which we assume the plaintiff was organized, provides that "The directors may determine the particular manner of construction so as to secure and maintain a smooth and permanent road, the track of which shall be made either of plank, stone, gravel, or other hard material, or in such proportions of either as the directors may deem expedient, so that the same shall form a hard and even surface."

Now, it seems to us that whether the road was such as the statute contemplates, was a question susceptible of direct proof. We think the evidence offered, with a view to show the character of the road as it was constructed, was too remote and conjectural. The fact that the company made contracts for the construction of the road that were not complied with, would afford no just inference that the road, as built, was not such as the statute requires. The company may have made contracts for a much more expensive road, with a view to its permanence, than would be required to build such a road as the statute requires, a partial performance of which would make a road filling the requirements of the statute.

We are of opinion that the court committed no error in rejecting the evidence. What we have said disposes also of an objection to an instruction of the court to the jury on that subject.

It is claimed that the judgment ought to be reversed because the evidence did not prove or tend to prove the case made by the complaint. It is said that the complaint charged merely a running of the gate, with intent to de-

fraud the company, of which it is claimed there was no proof. It is said in the brief that, "In every instance he," the defendant, "stopped before the gate and informed the gate-keeper that he refused to pay toll, because the company was not legally entitled to demand it."

The statute provides, (1 R. S. 1876, p. 660, sec. 17,) that "If any person or persons using any part of such road shall, with intent to defraud such company, * * * refuse to pay the toll he is bound by law to pay, or shall run by the gate without paying his toll, with intent to defraud the company, * * * each and every person concerned," etc., "shall, for every such offence, forfeit and pay to such company three dollars," etc. It is claimed that the statute makes two offences: the refusal to pay toll which one is bound by law to pay, and running by the gate without paying toll, with intent to defraud the company. And it is insisted that, here, the evidence shows a refusal to pay the toll, and not a running by the gate, which, it is claimed, is the only thing charged in the complaint. In this the counsel are mistaken. The complaint, after charging the defendant with having passed the gate several times, proceeds as follows: "And the plaintiff says that at each time the defendant run through the gate as aforesaid, the keeper of the toll-gate was in attendance, ready to receive the toll, which the defendant well knew, but he refused to pay said toll or any part thereof," etc. It thus appears that there was no variance between the proof and the allegation.

The first section of the act of March 5th, 1859, 1 R. S. 1876, p. 671, provides "That hereafter, whenever any gravel, turnpike, macadamized or plank road shall be suffered to get and remain out of repair for a longer period of time than would be required to make the necessary repairs with a reasonable force, the season of the year and other equitable circumstances considered, the corporation or company, owner or owners of such road shall not be entitled to receive and collect toll upon such road or upon

so much of the same as is out of repair, while the same shall remain out of repair, and it shall be lawful in any suit for the collection of toll or any penalty for failure to pay such toll, for the defendant to plead such want of repair in bar of said suit."

In reference to this statute, the court charged the jury as follows, viz.:

"Its purpose is to insure the good condition of the road, by withholding the right to take toll, so long as the company unreasonably neglects to put the road in repair, all the circumstances of the case considered. Whether the road was suffered to get out of repair, and whether the delay to repair was reasonable, are questions of fact for the jury to pass upon from the evidence."

It is objected, as we understand the brief, that this charge allows the jury to take into consideration "all the circumstances of the case," instead of the "equitable circumstances," as provided for by the statute. We think the charge was substantially right. The jury could not have well understood or inferred from the charge, that circumstances, other than equitable ones, would have rendered delay in repairing the road reasonable.

Objection is made to the following sentence in the ninth charge: "A long and steep hill on a road requires more attention and more frequent repairs than a level, gently rolling surface." This may be open to the objection that it undertakes to instruct the jury upon matter of fact; but it is difficult to see how the appellant was injured by it. It was rather in his favor than otherwise. His complaint of the condition of the road was directed, in a great measure, to the hilly portions. He was sworn as a witness, and testified, amongst other things, as follows: "I went through first on horse-back, and paid seven cents. Next, with a team, and found I could not haul as well as before the road was made, on account of the condition of the hill." He complained, to be sure, of other

parts of the road, but, on the whole, we are of opinion that he could not have been injured by the charge.

We have thus considered the questions made, and are of opinion that there is no available error in the record.

The judgment below is affirmed, with costs.